IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CT-3242-FL

| | | |
|---|---|---|
| JULIO ZELAYA SORTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| P.A. JOHN DOE, P.A. PHILLIP W. TOLMAN, JOHN DOE, and NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motions to dismiss for failure to state a claim and for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (DE 25, 32), and plaintiff's motion to compel discovery (DE 31). The motions were fully briefed and in this posture the issues raised are ripe for ruling. For the reasons that follow, the court grants in part and denies in part defendants' motions to dismiss and denies as moot plaintiff's motion to compel.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on August 30, 2018, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"). Plaintiff alleges defendants P.A. John Doe ("Doe I"), Phillip Tolman ("Tolman"), and John Doe ("Doe II") failed to provide adequate medical care for his chronic pain and other medical issues, retaliated against him for filing grievances, and

discriminated against him by denying medical care, in violation of First, Eighth, and Fourteenth Amendments to the United States Constitution. Separately, plaintiff alleges defendants North Carolina Department of Public Safety ("NCDPS") and Tolman violated his rights under the ADA by refusing his request for noise cancelling headphones. As relief, plaintiff seeks an injunction directing defendants to provide plaintiff with noise cancelling headphones and a "qualified physician" who can treat his various medical conditions. Plaintiff also seeks compensatory damages.

The court conducted its frivolity review of plaintiff's complaint on May 2, 2019, and allowed the action to proceed. Defendant NCDPS filed answer to the complaint on September 9, 2019. On October 18, 2019, defendant Tolman filed the instant motion to dismiss the complaint, arguing the complaint fails to state a claim on which relief can be granted. The motion was fully briefed.

On January 9, 2020, plaintiff filed the instant motion to compel discovery. Defendant NCDPS responded in opposition on January 23, 2020.

Defendant NCDPS filed the instant motion to dismiss on January 23, 2020, arguing plaintiff has failed to state a claim, and, alternatively, that the complaint fails to allege subject matter jurisdiction. This motion also was fully briefed.

## STATEMENT OF THE FACTS

Plaintiff's factual allegations are set forth in full[1] below:

> Upon February 6, 2016[,] defendant John Doe at the central prison discontinued Baclofen medication. [He] stated plaintiff uses a bunch of [expletive] to get medications, saying, if you do not receive your medication know

---

[1] Notably, plaintiff also attached approximately 80 pages of exhibits to the complaint, consisting primarily of records from administrative grievances he filed regarding the issues raised in his complaint.

it was me [who took] you off [it].

Plaintiff alleges that from November 2016 throughout the period of June 2019 defendant Tolman denial of medical care amounts to an exclusion [of] plaintiff from medical services.

[Plaintiff] complained of muscle spasms and pain in his left forearm, had no full motion of his left wrist, thumb, middle, ring, and pinky fingers, [which affected plaintiff's] life activity.

Plaintiff [suffers from] a neurological disorder that cause[s] jerking and shaking of [his] left hand. Defendant Tolman refused to treat plaintiff numerous time[s]. Specifically, in February 2016, January 2017, May 29, 2017, July 14, 2017, August 25, 2017. [Defendant Tolman failed] to order renewal prescription for Baclofen.

Plaintiff has degenerative disc disease, herniated causing neuralgia of the hips, legs, [and] into [the] upper spine [and] chest. [Plaintiff also experiences] pain and stiffness in the buttocks. [Plaintiff's conditions] affect different joints or body parts [and cause] persistent pain. Defendant Tolman refused [to] order[] renewal [of plaintiff's Hydrocodone] prescriptions.

When prison doctors in an effort to protect joints, to treat plaintiff['s] severe pain and stiff joints [and] muscle spasms, resume treatment for plaintiff for Baclofen and [Tramadol] medications, [utilization reviews] were entered for the renewal of these medications. Defendant John Doe on August 20, 2017, October 16, 2017, November 13, 2017, March 5, 2018, March 26, 2018, denied the medications for plaintiff who had previously received it.

On June 14, 2017, hearing specialist ordered and recommended noise canceling headphones for plaintiff who [is hearing impaired in both ears and] partly or wholly deaf.

Other health care provider entered a [utilization review] request for noise canceling headphones. Defendant John Doe, on August 9, 2017 and November 2017 denied the medical headphone.

Plaintiff on January 13, 2018 requested a[n] accommodation with defendant [NCDPS]. [NCDPS, however,] denied [the request and failed] to accommodate plaintiff['s] disabilities.

Defendant Tolman on April 26, 2018 denied the plaintiff [orthopedic] shoes for his leg and/or ankle symptoms of neuropathy of the feet secondary to spinal

3

compression and . . . bony deformity of the feet.

        Defendant Tolman on June 15, 2018 excluded plaintiff from receiving noise cancelling headphones.

        While plaintiff was in the medical office, he asked defendant Tolman reason for refusing the care. [Defendant Tolman responded,] "oh you grieved me, and you live[] in my house[]." Plaintiff without pain medication, pain and stiff [joints] worsen, throughout the day [and] sleepless [nights].

(DE 1 ¶ V).

## COURT'S DISCUSSION

A.    Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6),[2] "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir.

---

[2] Where defendant NCDPS filed its motion after filing answer to the complaint, the court construes the motion as seeking judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The substantive standard for deciding a motion for judgment on the pleadings, however, is materially identical to the standard for resolving a motion to dismiss under Rule 12(b)(6). See Mayfield v. National Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012) (citing Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002)). As previously noted, defendant NCDPS also moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Defendant NCDPS, however, fails to present any arguments suggesting the court lacks subject matter jurisdiction. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 482 (4th Cir. 2005).

2009) (citations omitted). Additionally, the court need not "accept as true [factual] allegations that contradict matters properly subject to judicial notice or by exhibit." See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)).

B.  Analysis

    1.  Eighth Amendment Claims

Plaintiff primarily alleges defendant Tolman and the Doe defendants[3] were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The first prong is objective – the prisoner must show that "the deprivation of [a] basic human need was <u>objectively</u> sufficiently serious." Id. (internal quotation omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

---

[3]  Where the Doe defendants have not been identified, the court's analysis of this claim focuses on defendant Tolman's actions. As previously explained to plaintiff, he must identify any Doe defendants and file motion to amend the complaint before the deadline for amending the pleadings in this action, which will be set in forthcoming case management order.

5

The second prong is subjective – the prisoner must show that "<u>subjectively</u> the officials acted with a sufficiently culpable state of mind." See <u>Strickler</u>, 989 F.2d at 1379 (internal quotations omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." <u>Shakka v. Smith</u>, 71 F.3d 162, 166 (4th Cir. 1995); see <u>Farmer</u>, 511 U.S. at 837. A plaintiff therefore must establish the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." <u>Jackson v. Lightsey</u>, 775 F.3d 170, 178 (4th Cir. 2014) (citing <u>Farmer</u>, 511 U.S. at 837–39). The subjective knowledge requirement can be proved "through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge . . . ." <u>Scinto v. Stansberry</u>, 841 F.3d 219, 225–26 (4th Cir. 2016).

Deliberate indifference is thus "a particularly high bar to recovery." <u>Iko</u>, 535 F.3d at 241. For claims involving medical care, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See <u>id.</u>; see also <u>Estelle v. Gamble</u>, 429 U.S. 97, 105–08 (1976).

Plaintiff alleges he suffers from a neurological disorder and degenerative disc disease (along with additional ailments) causing severe and chronic pain, which the court finds are serious medical needs. See <u>Iko</u>, 535 F.3d at 241 (4th Cir. 2008). Accordingly, plaintiff's complaint

6

alleges the objective component of his claim.

Turning to the subjective prong, plaintiff alleges defendant Tolman was aware of his chronic health conditions but failed to renew his prescriptions for Baclofen, Hydrocodone, or prescribe other effective medications. Plaintiff also alleges that defendant Tolman denied his request for orthopedic shoes despite his symptoms of neuropathy. As a result, plaintiff allegedly suffered "pain and stiff [joints] . . . throughout the day [and] sleepless nights." (Compl. (DE 1) ¶ V). Accepting these factual allegations as true and drawing all reasonable inferences in plaintiff's favor, plaintiff has sufficiently alleged defendant Tolman knew of and disregarded plaintiff's serious medical needs by failing to "renew" his prescriptions for the foregoing medications. See Jackson, 775 F.3d at 178; Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (holding inmate stated a claim for deliberate indifference to serious medical needs where nurse interfered with plaintiff's ability to obtain necessary treatment).

Defendant Tolman argues that the exhibits to the complaint establish he consistently provided treatment for plaintiff's medical issues, and the allegations therefore amount to at most a disagreement with defendant Tolman's treatment decisions. The court declines to dismiss the complaint on this basis. "[A]lthough . . . a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013). The reasonable inference from plaintiff's allegations is that defendant Tolman's treatment was wholly inadequate to treat his pain.[4]

---

[4] The record, of course, may not bear this out, and thus defendants can raise this defense at a later stage of the proceedings. Defendant Tolman also argues, based on the exhibits to the complaint, that another medical provider ultimately submitted a utilization review request for Baclofen in June 2017. Plaintiff, however, alleges defendant

7

As to the claim that defendant Tolman was deliberately indifferent by failing to provide over-the-ear headphones for watching television, the exhibits to the complaint establish defendant Tolman did not deny plaintiff's request. In one of his many grievances, plaintiff admitted that defendant Tolman submitted a utilization review request for over-the-ear headphones. (Compl. Exs. (DE 1-1) at 40). Although the reviewer ultimately denied the request, defendant Tolman was not personally responsible for such decision. (Id.). Plaintiff's Eighth Amendment claim premised on denial of over-the-ear headphones therefore is without merit. Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable [in a § 1983 action], a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); see also Veney, 293 F.3d at 730 (explaining that when resolving Rule 12(b)(6) motion the court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit"); see also Murphy v. Capella Educ. Co., 589 F. App'x 646, 655 (4th Cir. 2016) (noting conclusory factual assertions that are "belied by the attached exhibits" to a complaint need not be credited when resolving Rule 12(b)(6) motion).[5] Accordingly, the court

---

Tolman was deliberately indifferent to his serious medical needs before that date. Plaintiff also alleges defendant Tolman failed to renew additional pain medications. (See Compl. (DE 1) ¶ V).

[5] The alleged failure to provide over-the-ear headphones so that plaintiff could watch television also does not establish a serious deprivation of a basic human need. See Shakka, 71 F.3d at 166 (stating standard); see also James v. Milwaukee Cty., 956 F.2d 696, 699 (7th Cir.), cert. denied 506 U.S. 818 (1992); Scheanette v. Dretke, 199 F. App'x 336, 337 (5th Cir. 2006). Furthermore, to the extent plaintiff's claim is premised on defendant Tolman's refusal to submit another request over-the-ear headphones after the initial denial, the exhibits to the complaint establish such request would have been futile. (Compl. Exs. (DE 1-1) at 38 (explaining plaintiff's request for over-the-ear headphones was denied because he only wears one hearing aid); Compl. Exs. (DE 24-1) at 1 (explaining requests for over-the-ear headphones must be submitted through NCDPS's disability accommodation process, not medical providers)).

grants defendant Tolman's motion to dismiss with respect to this claim.[6]

3.      Retaliation

Plaintiff also asserts that defendant Tolman retaliated against him by failing to provide adequate medical treatment after plaintiff filed an administrative grievance complaining about Tolman's care. To establish a retaliation claim, plaintiff must show: 1) that he engaged in constitutionally protected First Amendment activity; 2) the defendant took an action that adversely affected that activity; and 3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Raub v. Campbell, 785 F.3d 876, 885 (4th Cir. 2015); see also Booker v. S.C. Dep't of Corr., 855 F.3d 533, 540 (4th Cir. 2017). "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine, 411 F.3d at 500.

A claim of retaliation is treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc) (noting that "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prison misconduct") (citation omitted). A plaintiff must adduce specific facts supporting the claim of retaliation because bare assertions of retaliation do not establish a claim of constitutional dimension. Adams v. Rice, 40 F.3d 72, 74-75 (4th Cir. 1994).

Plaintiff has sufficiently alleged a retaliation claim. Plaintiff alleges he engaged in

---

[6] In his response briefs, plaintiff alleges defendants were deliberately indifferent by failing to refer him to a neurologist and ignoring other medical issues. These claims, however, were not raised in plaintiff's complaint, and plaintiff cannot amend the complaint by alleging new claims in his response brief. See Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008); see also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

9

protected First Amendment activity by filing grievances. See Booker, 855 F.3d at 543-45. The court also finds that denial of medical care would likely deter a person of ordinary firmness from the exercise of First Amendment rights. Constantine, 411 F.3d at 500. And finally, plaintiff alleges that defendant Tolman stated he denied medical care because plaintiff filed grievances against him, which provides direct evidence of causation.

Defendant Tolman argues he did not retaliate against plaintiff because the exhibits to the complaint show he continued providing medical treatment to plaintiff even after plaintiff filed the grievance. As noted above, the fact that defendant Tolman provided some treatment does not mean he provided constitutionally adequate treatment. De'lonta, 708 F.3d at 526. Plaintiff essentially alleges defendant Tolman declined to prescribe necessary pain medications in retaliation for plaintiff filing grievances, which sufficiently alleges a retaliation claim for the reasons discussed above.

3.  Fourteenth Amendment Claim

To the extent plaintiff is attempting to allege the medical defendants violated his rights under the Fourteenth Amendment's Equal Protection Clause, the claim is without merit. The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Generally, in order to establish an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. If a plaintiff makes this showing, the court proceeds to determine

10

whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney, 293 F.3d at 730-31 (internal quotation omitted); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiff's allegations do not establish a violation of the Equal Protection Clause. Plaintiff, for example, does not sufficiently allege defendants denied medical care for discriminatory reasons, or that he was treated differently from other inmates who are "similarly situated."

4. Americans with Disabilities Act Claim

The court next turns to plaintiff's ADA claim alleged against defendants Tolman and NCDPS. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. As the Fourth Circuit recently explained, "to state a cause of action under Title II, an individual must plausibly allege (1) that he has a disability or has been regarded as having a disability; (2) that he is otherwise qualified to receive the benefits provided by a public entity; and (3) that he was denied those benefits or was otherwise discriminated against on the basis of his disability." Fauconier v. Clarke, 966 F.3d 265, 276 (4th Cir. 2020) (citing Wicomico Nursing Home v. Padilla, 910 F.3d 739, 750 (4th Cir. 2018)).

As to the first element, the term "disability" means "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). An individual is "regarded as having" a qualified impairment "if the individual establishes that he or she has been subjected to an action prohibited under [Title II of the ADA] because of an actual or perceived physical or

11

mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. § 12102(3)(A).

The court agrees with defendant NCDPS that plaintiff has not alleged these elements. Although plaintiff alleges in conclusory fashion that he is disabled due to a "hearing impairment" and that he is "partly or wholly deaf," the only specific supporting facts alleged are that a hearing specialist "ordered and recommended" noise cancelling headphones to assist plaintiff when he watches television. Plaintiff fails to allege any facts suggesting his hearing impairment substantially limits one or more major life activities, or that prison officials regard him as disabled. See Fauconier, 966 F.3d at 276; Cochran v. Holder, 436 F. App'x 227, 232-33 (4th Cir. 2011) (noting that partial hearing loss standing alone may not "substantially limit" major life activities under prior version of the ADA); (see also Compl. Exs. (DE 24-1) at 37, 39, 41 (DPS records stating plaintiff's "ADA status" was denied on December 14, 2018, because he "does not possess [a] mental or physical impairment [or] limitation" and that plaintiff does not qualify for a "TTY machine" to assist with communication)). Indeed, plaintiff's own allegations, the exhibits to the complaint, and other public judicial records establish plaintiff is able to hear in a variety of contexts. (See Compl. (DE 1) ¶ V (plaintiff able to hear defendant Tolman during medical appointment); Compl. Exs. (DE 1-1) at 33 (same); id. at 70 (plaintiff able to hear nurse)); see also Sorto v. Johnson, No. 5:18-CT-3314 (E.D.N.C. Nov. 9, 2018) (DE 1 ¶ V) (plaintiff alleging he is able to hear officer's statements and laughter); Sorto v. Russell, No. 5:18-CT-3346 (E.D.N.C. Dec. 11, 2018) (DE 1 ¶ V) (plaintiff able to hear corrections officer provide instructions to another officer).[7]

---

[7]  As discussed above, the court is not required to credit plaintiff's conclusory statement that he is "wholly

Plaintiff also fails to allege that he was "denied . . . benefits or was otherwise discriminated against on the basis of his disability." Plaintiff offers no allegations of discrimination. Nor does plaintiff adequately allege that he was denied benefits on the basis of his disability. According to the complaint and the exhibits attached thereto, defendant Tolman submitted plaintiff's request for over-the-ear headphones to an unidentified utilization reviewer, who denied the request because plaintiff wears a hearing aid in only one ear. (See Compl. (DE 1) ¶ V; Compl. Exs. (DE 1-1) at 38; Compl. Exs. (DE 24-1) at 1). Plaintiff was instructed to use ear buds for his other ear if necessary to watch television. (Compl. Exs. (DE 1-1) at 38; Compl. Exs. (DE 24-1) at 1). Defendants therefore denied plaintiff's request for over-the-ear headphones because medical providers determined his medical conditions did not justify them, not because of his hearing impairment. See Fauconier, 966 F.3d at 277 (holding plaintiff adequately alleged third element of ADA claim where plaintiff alleged defendants "expressly relied" on plaintiff's medical classification to deny benefits); Goodman v. Johnson, 524 F. App'x 887, 890 (4th Cir. 2013) (holding plaintiff's allegations that defendants failed to provide contact lenses instead of eyeglasses to treat his vision failed to allege denial of benefits on the basis of disability and noting "the ADA prohibits discrimination because of disability, not inadequate treatment for disability" (quoting Simmons v. Navajo Cnty., 609 F.3d 1011, 1021-22 (9th Cir. 2010), overruled on other grounds by Castro v. Cnty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016))); Spencer v. Easter, 109 F. App'x 571, 573 (4th Cir. 2004) ("Because there is no evidence in the record to suggest that any failure by the Defendants to obtain Spencer's medication in a timely manner stemmed from

---

deaf" when that statement is contradicted by the exhibits attached to plaintiff's complaint and his own allegations. See also Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010).

any discriminatory intent due to any alleged disability, we find that Spencer fails to establish a prima facie claim under the ADA.").[8]

5.  Plaintiff's Motion to Compel

As noted above, plaintiff also moves for an order compelling defendant NCDPS to respond to his discovery requests. Where the court has dismissed plaintiff's claims against defendant NCDPS, plaintiff's motion to compel is moot. Additionally, the court will appoint counsel to conduct discovery on plaintiff's behalf pursuant to Standing Order 20-SO-1 after entry of the case management order.

## CONCLUSION

Based on the foregoing, defendant NCDPS's motion to dismiss (DE 32) is GRANTED and plaintiff's claims against NCDPS are dismissed with prejudice. Defendant Tolman's motion to dismiss (DE 25) is GRANTED IN PART and DENIED IN PART. The motion is denied as to plaintiff's retaliation claim and the Eighth Amendment claim premised on denial of pain medications and orthopedic shoes. The motion is GRANTED as to the remaining claims alleged against defendant Tolman. Plaintiff's motion to compel (DE 31) is DENIED. An initial order will follow.

SO ORDERED, this the 24th day of September, 2020.

LOUISE W. FLANAGAN
United States District Judge

---

[8] Where plaintiff has failed to state a claim on which relief can be granted, the court does not address defendant NCDPS's remaining arguments for dismissal. See Spencer, 109 F. App'x at 573.